O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTV, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,<br><br>                Plaintiff,<br><br>  v.<br><br>E&E ENTERPRISES GLOBAL, INC.,<br><br>                Defendant. | Case No. 17-06110-DDP-PLA<br><br>**ORDER RE: PRELIMINARY INJUNCTION** |

This matter comes before the court on Plaintiff's application for a preliminary injunction. Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

**I. BACKGROUND**

This case arises from a contractual dispute between Plaintiff DirecTV, LLC ("DirecTV") and E&E Enterprises Global, Inc ("E&E"). DirecTV provides satellite multi-channel television programming, equipment, and services. (Decl. of Jeremy McCree in Support of Pls.' App. for TRO ("McCree Decl"), Ex. A at 1). E&E is a Government

Services Administration Schedule Contract Holder offering satellite television installation, service, and maintenance to government entities. (Decl. of Ernest Green in Supp. of Def.'s Opp'n to TRO Appl. ("Decl. Green"), ¶ 4).

Beginning in 2010, DirecTV and E&E entered into a series of three contracts (the "Agreements"), whereby E&E would promote, sell, and collect payment for DirecTV programming and services. The 2010 Commercial Agreement provided E&E the rights to market and solicit the sale of DirecTV systems and programming. (McCree Decl., Ex. A at 1). The 2012 Affiliate Agreement designated E&E as a commissioned salesperson to promote and deliver DirecTV's Satellite Master Antenna Television (SMATV) programming. (*Id.*, Ex. B at 1). Finally, the 2014 Billing Addendum to the Affiliate Agreement allowed E&E to provide billing and collection services for DirecTV. (*Id.*, Ex. C at 1). Each of the Agreements contained specific provisions in the event of termination, with or without cause, by DirecTV. (*Id.*, Ex. A at 12; *id.*, Ex. B at 6-7; *id.*, Ex. C at 3).

On June 27, 2017, DirecTV mailed a letter to E&E, terminating each of the Agreements. (*Id.*, Ex. D). DirecTV attributed the termination to E&E's failure to remit approximately $700,000 to DirecTV. (*Id.*, ¶9). E&E disputes these charges, alleging that DirecTV repeatedly issued inaccurate billing statements, which lacked the necessary detail required by the Billing Addendum. (Decl. Green, ¶¶9, 11).

One month later, on July 27, Jeremy McCree, an AT&T commercial sales operations manager responsible for managing DirecTV programming and services, emailed Bill Casiday, E&E's Chief Technology Officer. (Decl. McCree, ¶ 7). McCree's email requested the names and contact information of the contracting officers for 145 client accounts that E&E was servicing with DirecTV programming in order to "facilitate" the transition of billing. (Decl. McCree, ¶ 7; *id.*, Ex. E). Casiday responded "we will let your team know what we plan to do with our government customers in the next few days." (Decl. McCree, ¶ 7; *id.*, Ex. E). McCree did not receive a further response. (*Id.*, ¶8).

DirecTV contends that, despite its June 27 letter, E&E "continues to bill customers for DirecTV programming," but only makes minimum payments to DirecTV. (Decl. Shannon Rothman, ¶6.) However, DirecTV automatically limits the service on accounts that are unpaid for 90 days and suspends service on those that remain unpaid for 120 days. (*Id.*, ¶7). DirecTV argues that, as a result of E&E's underpayment, some clients may find their service disconnected even when they have been making payments to E&E. (Decl. McCree, ¶ 13).

In addition to these billing disputes, each party contends that the other improperly interfered with its customer relationships. Specifically, DirecTV contends that E&E is attempting to transition customers to DirecTV's competitors instead of complying with its requests. (Decl. McCree, ¶10; *id.*, ¶11). E&E counters that DirecTV has improperly contacted customers informing them of the termination of its relationship with E&E, including on June 21, 2017, several days prior to DirecTV's official notice of termination. (Decl. Green, Ex. L.; *id.* at ¶23).

On August 17, 2017, DirecTV filed a Complaint alleging four causes of action, including breach of written contract, conversion, tortious interference with prospective economic relations, and unfair competition, against E&E. (Dkt. 1).[1] Also on August 17, 2017, DirecTV filed an application for a Temporary Restraining Order ("TRO"), seeking an order that E&E deliver all contractually-required customer contact information and immediately notify all accounts previously serviced by E&E that E&E is no longer a DirecTV dealer or billing agent. (Dkt. 5). The Court granted the TRO on August 22, 2017.[2] (Dkt. 13).

---

[1] E&E also filed counterclaims against DirecTV for breach of written contract, tortious interference with contractual relations, tortious interference with prospective economic advantage, violation of California Unfair Competition Law, breach of covenant of good faith and fair dealing, accounting and declaratory judgment. (Dkt. 28).

[2] E&E contested that it had received proper notice of the TRO from DirecTV, thereby excusing its failure to execute the terms of the Order. (*See* Dkt. 18, 9-10).

On September 5, 2017, the court dissolved the TRO and issued a preliminary injunction, ordering E&E not to transfer any existing customers that are a subject of this lawsuit to any other satellite providers, and ordering DirecTV to continue to provide all services pursuant to the Agreements without interruption. (Dkt. 21). Furthermore, the preliminary injunction order directed E&E to provide DirecTV a list of customers, so that DirecTV could comply with the court's order to continue their services without interruption, but forbade DirecTV from using the list to solicit those customers. (*Id*.). Finally, the court ordered the parties to file additional briefing before a hearing on the matter on September 25, 2017.

**II. LEGAL STANDARD**

The Supreme Court set forth the standard for assessing a motion for preliminary injunction in *Winter v. Natural Resources Defense Council, Inc*., 129 S. Ct. 365, 376 (2008). "Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).

**III. DISCUSSION**

**A. Likelihood of Success on the Merits**

DirecTV's likelihood of success depends on the court's interpretation of the Agreements with respect to the limited issue on which DirecTV seeks injunctive relief. Simply stated, that issue is whether E&E violates its contract obligations by refusing to deliver customer contact information to DirecTV, or issue notices to customers, notifying them of the termination of E&E's relationship with DirecTV.

As a threshold matter, the parties dispute whether DirecTV terminated the Agreements through written notice to E&E on June 27, 2017. Even if DirecTV terminated the Agreements, the parties further dispute whether DirecTV is contractually entitled to

the specific preliminary injunctive relief requested. The court addresses each of these issues below in turn.

### 1. Termination of the Agreements

DirecTV and E&E entered in a series of agreements pertaining to E&E's provision of DirecTV programming and services to customers: the Commercial Agreement, the Affiliate Agreement, and the Billing Addendum.

The Commercial Agreement governs E&E's promotion and sale of DirecTV products. (McCree Decl., Ex. A at 1). DirecTV may terminate the Commercial Agreement, with or without cause, upon at least 30 days' notice to E&E. (*Id*. at 13). In the June 27 letter, DirecTV provided E&E notice of its termination of the Commercial Agreement. (*Id*., Ex. D). Therefore, the court finds that the Commercial Agreement terminated on July 27, 2017, or 30 days after the letter.

Next, the Affiliate Agreement allows for termination without cause upon 90 days' notice, or immediate termination after a material breach. (McCree Decl., Ex. B at 6, § 3.2). In its June 27 letter, DirecTV claimed that E&E committed a "material breach" of the Agreements by failing to remit the appropriate billing amounts to DirecTV. (*Id*., Ex. D). Therefore, under DirecTV's reading, it terminated the Affiliate Agreement immediately for cause. In the alternative, DirecTV also invoked its right to termination without cause upon 90 days' notice, effective September 25, 2017. (*Id*.). E&E argues that September 25 is the operative date of termination. (Opp. Br. at 5). It reasons that the Affiliate Agreement nowhere details the billing arrangement between DirecTV and E&E, such that a failure to remit payments to DirecTV would constitute a "material breach" of the Affiliate Agreement. Therefore, the court finds that this agreement terminated, at the latest, on September 25, 2017.

Finally, the parties entered into a Billing Addendum to the Affiliate Agreement. (*Id*., Ex. C at 1.). The Billing Addendum allows for termination without cause upon 30 days' notice, or termination with cause if E&E "fails to remit to DirecTV any amounts owed to DirecTV and does not cure such failure within five (5) days after written notice."

5

(*Id*. at 3, §§ 6.1, 6.3). DirecTV invoked both termination provisions in its June 27 letter. Therefore, the Billing Addendum would have terminated on July 2, under the termination with cause provision, or on July 27, under the termination without cause provision.

In view of the facts set forth above, the court concludes that the Commercial Agreement and the Billing Addendum terminated, at the latest, on July 27, 2017. The Affiliate Agreement, by contrast, terminated as late as September 25, 2017. E&E contends, however, that the terminations were improperly effected without adequate notice. It alleges that on the same day as the June 27 letter, DirecTV terminated E&E's access to the DirecTV dealer portal, which permitted it to service customers by adding or removing services, submitting repair requests, and resolving service disruptions. (Def's Supp. Br. at 10; Second Green Decl. ¶ 3). The court finds that, even if this were true, it does not necessarily excuse E&E's failure to comply with the contractual termination obligations after the expiration of the required notice period. Moreover, E&E has exercised its opportunity to raise these arguments and seek damages as part of its counterclaims. (*See* Dkt. 24, ¶ 35).

Thus, although the parties dispute the precise dates of termination, the court finds that the Agreements are now terminated.

### 2. Obligations Upon Termination

In its application for a preliminary injunction, DirecTV invokes the provisions of the Agreements relating to the rights and obligations of the parties upon termination. Specifically, DirecTV seeks an order directing E&E to (1) to deliver all contractually-required customer contact information to DirecTV and (2) to notify all accounts previously serviced by E&E that E&E is no longer a DirecTV dealer or billing agent. (Dkt. 5-1, at 2).

In support of this request for injunctive relief, DirecTV cites to several provisions of the Agreements. Section 13.2 of the Commercial Agreement states that, upon termination, DirecTV shall "cease to identify itself as an authorized dealer of DirecTV

Service or otherwise affiliated in any matter with DirecTV." (McCree Decl., Ex. A at 13). The remaining two Agreements, upon which DirecTV primarily relies, set forth the termination obligations of E&E in greater detail.

First, Section 3.4(a) of the Affiliate Agreement provides that DirecTV will resume control over any billing and collection activities in relation to DirecTV SMATV programming. (*Id*., Ex. B at 7). (*Id*.) Specifically, the provisions of Section 3.4 read as follows:

- "[E&E] shall no longer have any right to provide or be involved in the provision of DirecTV SMATV programming nor bill or collect for any DirecTV SMATV Programming."
- "[E&E] shall direct all SMATV Establishment and Affiliate Property inquiries regarding the DirecTV SMATV Programming to DirecTV . . . ."
- "DirecTV may notify the Affiliate Properties that [E&E]'s relationship with DirecTV has terminated . . . ."
- "Within ten (10) days of any request by DirecTV, E&E shall send written notices (if [E&E] bills and collects any fees for DirecTV SMATV programming, any such notice shall provide that the Affiliate Property shall cease paying [E&E] for such programming and start paying DirecTV) to all Affiliate Properties, notifying them that [E&E]'s relationship with DirecTV has terminated . . . ."
- "[F]or a reasonable transition, not to exceed the expiration of an Affiliate Property's SMATV Viewing Agreement, [E&E] shall not impair the ability of any SMATV Establishments to continue to receive DirecTV SMATV Programming, nor shall [E&E] impair in any manner whatsoever DirecTV's continued access…to deliver DirecTV SMATV programming to the former Affiliate Property." (*Id*.)

The court finds that the relief envisioned in DirecTV's preliminary injunction is consistent with the obligations detailed in the Affiliate Agreement. However, because the Affiliate Agreement arguably did not terminate until recently, September 25, 2017, the court examines whether similar relief can be found in the Billing Addendum.

Like the Affiliate Agreement, the Billing Addendum provides that DirecTV will process billing and collection activities upon termination. In addition, Section 6.4 of the Billing Addendum contemplates a billing transition period, whereupon the parties will "work together" to complete the transfer of necessary data and records:

> DirecTV will process all future billing and collection activities for Eligible Establishments; provided, however, that the Parties will work together to transition for a sixty (60) day wind-down period if required by DirecTV ("Wind-Down Period"). . . . During the Wind-Down period, the Parties will return to the other Parties respective data, information, and other records, and finalize transfer of billing, collection services, remittance, and transition of the Billing and Collection Services for the Eligible Establishments from [E&E] back to DirecTV.

(McCree Decl., Ex. C, at 3). [3]

Moreover, a separate provision of the Billing Addendum, Section 1.1(c), provides DirecTV with more expansive rights to directly arrange for billing and collection services:

> DirecTV may itself perform billing and collection services, either directly, or indirectly, or in conjunction with any third party, and may authorize parties other than [E&E] to provide billing and collection services for the DirecTV Charges upon any terms as DirecTV may determine at its discretion. Except as set forth in this Addendum, and notwithstanding anything to the contrary in the [other Agreements], DirecTV has the sole and absolute right to perform the billing and collection activities to SMATV Commercial Establishments and Commercial Establishments regarding the DirecTV Charges, and DirecTV may freely contact Eligible Establishments, including but not limited to, through marketing material and other promotional communications." (*Id*. at 1).

Here, the provision of customer contact information requested by DirecTV is consistent with the scope of the termination obligations in the Billing Addendum, namely that E&E will "work together" with DirecTV to facilitate transfer of client billing arrangements. (*Id.* at 1, 3). E&E's refusal to provide DirecTV customer contact information to facilitate the billing transition would appear to defeat the overriding purposes of these provisions.

As a result, the court finds that DirecTV has demonstrated a likelihood of success on its contract claims arising from the termination.[4]

### B. Irreparable Harm

---

[3] Eligible Establishments include those "for which [E&E] is providing Billing and Collection Services under this Addendum." (*Id*. at 1, § 1.1(a)).

[4] However, the court declines to comment at this preliminary juncture on whether, or to what degree, DirecTV and E&E owe each other sums pursuant to the Agreements.

8

DirecTV advances three primary arguments in support of its contention that E&E's failure to comply with its post-termination contractual obligations will create irreparable harm. The first, and strongest, contention is that E&E is unlikely to pay the full measure of monetary damages awarded for any breach of contract arising out of the termination. *See Aliya v. Medcare Fin., LLC v. Nickell*, 2014 WL 12526383, at *5 (C.D. Cal. Nov. 26, 2014) ("[D]amages are no remedy at all if they cannot be collected.").

In March 2016, E&E filed a Chapter 11 petition in bankruptcy court. *See E&E Enterprises Global, Inc.*, No. 16-50334-FJS (Bankr. E.D. Va., Mar. 15, 2016). Approximately one year later, in April 2017, the bankruptcy court dismissed E&E's petition pursuant to 11 U.S.C. § 1112(b)(4)(A). *Id*. at Dkt. 283, 301. A bankruptcy court may dismiss a petition under this code provision when there exists a "(1) substantial or continuing loss to or diminution of estate assets; and (2) an absence of a reasonable likelihood of rehabilitation." *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 61 (6th Cir. B.A.P. 2013). DirecTV argues that the recent dismissal of E&E's petition illustrates that it is at significant risk of insolvency.

E&E contests this characterization. Despite the dismissal of its bankruptcy petition in April 2017, E&E asserts that it has "paid all its payroll and bills." (Green Decl. ¶10.) Specifically, E&E states that it has paid DirecTV $361,715.47 since May 2017, which resolves its two post-bankruptcy bills from DirecTV, and other outstanding debts. (Second Green Decl. ¶¶ 13, 14). Furthermore, E&E asserts that its daily operations have continued without any additional lawsuits or liens. (Second Green Decl. ¶ 24). E&E also highlights its ongoing federal and commercial contracts unrelated to DirecTV and its recent acquisition of additional contracts. (Second Green Decl. ¶ 15).

At the same time, E&E maintains that "the government contracts that DirecTV is asking the Court to command E&E to breach constitute approximately 90% of E&E's business." (Green Decl. ¶ 27). This declaration significantly undercuts E&E's argument that it will remain financially viable upon the termination of the Agreements. Therefore,

the court finds that, absent injunctive relief, DirecTV will likely be unable to recover damages resulting from E&E's breach at the close of the litigation.

DirecTV also claims that the abrupt termination of certain customer accounts due to underpayment by E&E will result in a loss of goodwill. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). To avoid this harm, DirecTV appears to contend that it requires the names and contact information of the contracting officers for each client account. (Ross. Decl. ¶ 3). Yet E&E's officers have submitted declarations that DirecTV already has the means of preventing termination of service without the need for E&E to provide access to the customer contact lists, and that they have done so repeatedly in the past, absent such information. (Casiday Decl. ¶¶ 4-6; Second Green Decl. ¶ 11). In addition, assuming that DirecTV can identify those customers at risk of premature termination, DirecTV has not proffered evidence that it would be unduly burdensome for it to continue its services to these customers. Therefore, under the circumstances, any loss of customer goodwill as a result of premature termination of service would appear to be a harm of DirecTV's creation.

Third, DirecTV alleges irreparable harm because it will be "preclude[d] from effectively competing to retain its customers, while E&E tries to sell those customers to Dish Network or another provider." (Supp. Br. at 15.) Although courts have sometimes found irreparable harm resulting from restraints in competition, this finding is often limited to circumstances in which the company faces "the threat of being driven out of business." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). In this case, the court concludes that DirecTV has not made a sufficient showing of irreparable harm resulting from alleged restraints on its ability to compete.

Nonetheless, relying upon the risk of non-payment of damages, the court finds that DirecTV has set forth a significant threat of irreparable injury absent injunctive relief.

**C. Balance of the Equities**

In weighing the equities of a preliminary injunction, a court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

DirecTV asserts that it will be harmed in the manner described above if E&E were to continue to bill clients for services without remitting payments due. Moreover, both parties claim that the court's grant or denial of the requested injunctive relief will harm their ability to compete for customers and retain goodwill.

E&E additionally claims that, by providing DirecTV with its customer lists and notifying them of the termination, it will be harmed by defaulting on its government contracts. (Green Decl. ¶ 27). Yet, as the Agreements have already terminated, then mere performance of its post-termination obligations would likely not effectuate more harm than already done by the fact of termination. Such performance would merely hold E&E to its contractual obligations under the Agreements. *See Lawless v. Bhd. of Painters, Decorators & Paperhangers of Am.*, 143 Cal. App. 2d 474, 478, 300 P.2d 159 (1956) ("If two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure performance of his contract even though the necessary result will be to cause a breach of the other contract."). E&E further maintains that compelling it to facilitate the billing transition to DirecTV will cause it to violate federal contracting law, specifically 48 C.F.R. § 52.249-8. That section nowhere mandates that E&E fulfill its federal contracts; rather, it appears to outline the rights and remedies available to the federal government in case of default.

Therefore, the court finds that the balance of the equities weighs in favor of granting the limited injunctive relief requested by DirecTV.

**D. Public Interest**

Finally, the court looks to whether the public interest would be served by the issuance of a preliminary injunction. In analyzing this factor, a court primarily looks to the impact of the judgment on third parties. *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002). In this case, the court concludes that the impact of the judgment

would be neutral, or potentially favorable for those customers who are at risk of premature termination due to the non-remittance of payments to DirecTV. As a result, the court finds that this factor tilts slightly in favor of granting the injunction.

### III. Request for Order To Show Cause

In its supplemental opposition papers, E&E requests that this court issue an order to show cause for contempt resulting from DirecTV's non-compliance with its Order of September 5. Civil contempt sanctions may be imposed to "coerce obedience to a court order" or to "compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior." *Religious Tech. Ctr. v. Henson*, 229 F.3d 1158 (9th Cir. 2000). The present preliminary injunction dissolves the prior Order of September 5, thus negating the alleged need to enforce compliance. Nor can E&E directly attribute the premature termination of service among certain customers to a willful violation on the part of DirecTV. The court thus denies E&E's request.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS DirecTV's application for a preliminary injunction.

E&E is hereby ordered to deliver to DirecTV all contractually-required customer contact information to allow DirecTV to complete the billing transition. The court, however, declines DirecTV's additional request to order that E&E "immediately notify all accounts previously serviced by E&E that E&E is no longer a DIRECTV dealer or billing agent, and that those customers need to transition their accounts to DIRECTV or a new DIRECTV dealer." (Pl.'s Br. at 2). The fact of termination of the Agreements has been established in this Order. In view of this fact, the court finds that it is preferable to commend the parties to abide by their contractual obligations without the necessity of court intervention at this time.

//

//

//

The court's previous Order issued on September 5, 2017, (Dkt. 21), is hereby dissolved.

**IT IS SO ORDERED.**

Dated: September 25, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE