UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTV, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,<br><br>        Plaintiff / Counter-Defendant,<br><br>    v.<br><br>E&E ENTERPRISES GLOBAL, INC.,<br><br>        Defendant / Counterclaimant. | Case No.  2:17-06110-DDP-PLA<br><br>**ORDER RE: PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS**<br><br>[Dkt. 47] |

        This matter comes before the court on Plaintiff's Motion to Dismiss Defendant's First Amended Counterclaims, (Dkt. 47).  Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

I.  **BACKGROUND**

        This case arises from a contractual dispute between Plaintiff DirecTV, LLC ("DirecTV") and Defendant E&E Enterprises Global, Inc. ("E&E"). E&E is a General Services Administrator Schedule Contractor ("GSA") contracted by federal government agencies to install, maintain, and repair satellite television equipment and to provide

satellite television programming. (First Am. Countercl. ("FAC") ¶ 2.) In order to provide the aforementioned services, E&E enters into contracts with other companies, among them DirecTV. (*Id.* ¶¶ 10, 11.)

The court assumes the parties' familiarity with the facts of this case, which have been detailed in its prior Orders. (*See* Dkts. 33, 39.) As relevant here, DirecTV and E&E entered into a series of contracts (the "Agreements"), whereby E&E would promote, sell, and collect payment for DirecTV programming and services. (FAC ¶ 11.) In exchange, E&E would receive a commission "based on the total billings of E&E's customers." (*Id.* ¶ 15.) E&E alleges that DirecTV breached its contract by failing to pay E&E the commissions owed. (*Id.* ¶ 29.) E&E further alleges that DirecTV improperly terminated the Agreements because DirecTV failed to provide adequate written notice of the termination to E&E in accordance with the Agreements. (*Id.* ¶ 36.)

Subsequently, DirecTV filed a Complaint and an application for a Temporary Restraining Order alleging, *inter alia*, that E&E breached its contracts with DirecTV by failing to remit payments and failing to perform the post-termination obligations required by the Agreements. (Dkts. 1, 5.) E&E filed Counterclaims. (Dkt. 28.) The court dismissed E&E's Counterclaims for failure to state a claim. (Dkt. 39.) E&E filed its First Amended Counterclaims, which include claims for breach of contract, tortious interference with contractual relations, tortious interference with prospective economic relations, accounting, and violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (*See generally* FAC, Dkt. 42).

DirecTV now moves to dismiss E&E's First Amended Counterclaims.

## II. LEGAL STANDARD

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."

*Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.  DISCUSSION

### A.  First Counterclaim for Breach of Written Contract

The elements of a breach of contract claim are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). In its prior Order, the court concluded that E&E had adequately pled all of the elements, except for "performance or excuse for nonperformance" of its contractual duties. (Dkt. 39, at 6.)

In its First Amended Counterclaims, E&E elaborates that it "performed all covenants required of it and paid those amounts due and owing under the Agreements," except to the extent that it was excused from doing so. (FAC ¶ 37.) Specifically, E&E sets forth the following excuses for non-performance:

"(1) DirecTV's overbilling of E&E's accounts; (2) DirecTV's refusal to accept payment of the correct amounts actually due and owed to it; (3) DirecTV's consistent under-calculation of commissions due and owing to E&E for which

E&E was entitled to a credit on its accounts with DirecTV; (4) DirecTV's consistent over-calculation of chargebacks due and owing to it from E&E; and (5) E&E's inability to pay amounts owed on an inaccurate bill whilst in bankruptcy." (*Id*. ¶ 37.)

The first, third, and fourth reasons are not excuses in themselves. Rather, they relate to E&E's contention that DirecTV under-calculated the amounts owed to E&E. Only the second and fifth reasons explain why E&E was excused from paying to DirecTV any outstanding amounts that were not in dispute. In California, performance is excused when it is "prevented or delayed by the act of the creditor, or by the operation of law." Cal. Civ. Code § 1511.

First, E&E alleges that DirecTV refused to accept E&E's payments of the reduced amounts that E&E claimed it owed. (*Id*. ¶ 37.) DirecTV argues that E&E must specifically allege "with examples or otherwise, that DirecTV refused to accept payments from E&E" (MTD at 7), and that "E&E does *not* allege that it made a payment that DirecTV rejected," (Reply at 4).

The court agrees that E&E's pleading contains some ambiguity as to whether DirecTV in fact (1) refused to accept payment of the sums tendered by E&E or, alternatively, (2) refused to accept that these sums represented the correct amounts of outstanding debt owed by E&E. Therefore, the court grants E&E leave to amend its pleadings to specifically allege that E&E offered to pay DirecTV the undisputed amounts owed, but that E&E was prevented from doing so because DirecTV refused to accept E&E's payments.

Second, E&E states that it was unable "to pay amounts owed on an inaccurate bill whilst in bankruptcy." (FAC ¶ 37.) It is unclear what constitutes the precise source of E&E's excuse. In other words, payment of the undisputed amounts owed to DirecTV is not excused by virtue of the fact that the bills were inaccurate. Nor does E&E explain why it might have been prevented from making payments "by operation of law." Cal. Civ. Code § 1511. In California, "excuses must be pleaded specifically." *Durell v. Sharp*

*Healthcare*, 183 Cal. App. 4th 1350, 1367 (Ct. App. 2010) (citations omitted). Thus, the court dismisses this claim with leave to amend.[1]

### B. Second Counterclaim for Breach of Written Contract

In the second counterclaim for breach of contract, E&E alleges that DirecTV materially breached the terms of the Agreements by "fail[ing] to pay commissions due and owing to E&E," and by "applying incorrectly calculated and excessive chargebacks." (FAC ¶¶ 42, 43.) In its previous Order, the court directed E&E to replead this claim in order to "specify which provisions of the Agreements were breached, over what period, and with respect to which commissions." (Dkt. 39, at 7.)

In its FAC, E&E specifies that, beginning around February 2014, DirecTV failed to pay the following commissions: "(1) prepaid programming commissions and bonuses pursuant to Paragraphs 6.1 and attached Schedule 6.1 of the Commercial Agreement, (2) continuing service commissions pursuant to Paragraph 6.2 and attached Schedule 6.2 of the Commercial Agreement; and (3) commissions pursuant to Section 2.2 and attached Exhibit B or the SMATV Agreement." (FAC ¶¶ 41, 42.)

The court concludes that these amended allegations satisfy E&E's imperative to put DirecTV on notice of the commissions that E&E claims were unpaid. Accordingly, E&E need not, as DirecTV contends, additionally specify "a single actual commission for any sale that DirecTV did not pay." (MTD at 7.) Nor must E&E provide additional granularity as to the kinds of "prepaid programming commissions and bonuses pursuant to . . . Schedule 6.1 of the Commercial Agreement," (FAC ¶ 41), in order to state a claim for relief.

Yet E&E repeats the deficient allegations of excuse articulated in its first cause of action. (FAC ¶ 45.) As the court concluded above, if E&E is to successfully plead excuse,

---

[1] DirecTV also contends that, because it was "authorized to terminate the Agreements with immediate effect due to E&E's bankruptcy," then this provides an independent ground for dismissal of the breach of contract claim. (Reply at 4.) Not so. Although the Agreements provided DirecTV the authority to terminate them upon bankruptcy, there is no evidence that DirecTV actually exercised its authority to do so.

it must plead facts establishing excuse with specificity. Therefore, the court dismisses the claim on this basis with leave to amend.

### C. Third Counterclaim for Tortious Interference with Contractual Relations

To plead a claim for tortious interference with contractual relations, E&E must allege: "(1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).

In its Amended Counterclaims, E&E specifies that DirecTV interfered with E&E's contracts with a number of VA facilities. (FAC ¶ 49.) Specifically, E&E alleges that DirecTV intended to disrupt the performance of those contracts by "wrongfully represent[ing] that E&E was terminated prior to the actual termination date, and otherwise wrongfully solicit[ing] those customers away from E&E prior to the termination of the SMATV Agreement." (FAC ¶ 51.)

DirecTV contends that E&E "never alleges that DirecTV's conduct actually caused a breach, disruption, or early termination of its VA contracts." (MTD at 9.) The court disagrees. E&E alleges that DirecTV's conduct "caused those E&E customers to terminate their agreements with E&E" and "depriv[ed] E&E of access to DirecTV dealer services that would allow E&E to carry out its obligations under various contracts with its government entity customers." (FAC ¶¶ 54, 55.) Therefore, E&E has adequately pled a breach or disruption of these contracts.

In addition to the VA contracts, E&E references a former contract with TSA. TSA allegedly terminated its contract with E&E because DirecTV informed TSA that it could upgrade to high-definition satellite services "without further service commitments or additional expenses," whereas E&E had previously informed TSA that it needed to commit to a new two-year agreement. (FAC ¶ 17.) TSA subsequently contracted with another company that was not a DirecTV dealer. (FAC ¶ 18.)

E&E alleges that this behavior was intended to "circumvent E&E" and disrupt its contractual relationship with TSA, and that it eventually "led to TSA terminating E&E's agreements with it in or around June 2016." (FAC ¶ 18.) It is not implausible that incidents of confusion or miscommunication as to the terms of service may have prompted TSA to seek out the services of another satellite television vendor and terminate its relationship with E&E. Reviewing the revised allegations, the court concludes that E&E has adequately pled the elements for tortious interference with the TSA contract. Therefore, the court denies DirecTV's motion to dismiss E&E's counterclaim for tortious inference with contractual relations.

### D. Fourth Counterclaim for Tortious Interference with Prospective Economic Advantage

Under California law, a claim for tortious interference with prospective economic advantage consists of the following elements: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

The only third party that E&E specifies in its tortious inference claim is TSA. After the termination of its original TSA contract, E&E asked TSA around June 14, 2017 whether it could regain its contract with TSA. (FAC ¶¶ 19, 61, 63.) Between June 14 and June 21, TSA contacted DirecTV and was informed that E&E was no longer a DirecTV dealer. (FAC ¶ 20.) Consequently, TSA declined E&E's request. (*Id*.) Soon thereafter, on June 27, 2017, DirecTV mailed E&E a letter terminating the Agreements. (McCree Dec., Ex. D; FAC ¶ 16.) E&E states that it "was denied a contract with TSA due to DirecTV's misrepresentation of E&E's status as a DirecTV dealer," and that the TSA contract was instead awarded to DirecTV around July 12, 2017. (FAC ¶ 63.)

The court agrees that E&E could have conceivably been awarded the TSA contract but for DirecTV's representation that E&E was no longer a DirecTV dealer. Yet, as the court concluded earlier, "with respect to a prospective contract with TSA, the court cannot reasonably infer on the basis of the facts alleged that E&E would have benefitted from accepting a third-party contract that it would have been unable to perform several days or weeks later, upon the termination of E&E's role as a DirecTV dealer." (Dkt. 39, at 10-11.) In other words, E&E's allegations must show "economic harm to the plaintiff proximately caused by" DirecTV's representation. *Korea Supply Co.*, 29 Cal. 4th at 1153.

Before termination, the Agreements prevented E&E from selling or soliciting "any other multi[-]channel video service which competes with the DirecTV Service. . . ." (McCree Decl, Ex. A (Commercial Agreement) § 1.4.) After termination, the Agreements continued to prevent E&E from, "on behalf of any provider of audio/video multichannel video/entertainment programming services or equipment or on its own behalf, solicit[ing] any Commercial Subscriber who was procured by [E&E] and is a Commercial Subscriber as of such termination date." (*Id*. § 13.2.) Moreover, upon termination, the Agreements prohibited E&E from engaging in "all activities related to . . . the promotion, marketing and advertising of the National Commercial Offers and DirecTV Service" and "the sales of DirecTV programming packages." (*Id*.) Therefore, by operation of these contractual provisions, E&E would have been prevented from, as it contends, providing TSA with "alternative satellite television service" from a DirecTV competitor both before or after termination.[2] (FAC ¶ 64.) In view of this critical limitation, the court finds that E&E cannot adequately set forth a basis for "probability of future economic benefit" arising from the prospective TSA contract. *Korea Supply Co.*, 29 Cal. 4th at 1153. The court therefore dismisses this claim with prejudice.

### E.  Fifth Counterclaim for Violation of California Unfair Competition Law

---

[2] E&E has not challenged the validity of these contractual provisions.

8

California's Unfair Competition Law ("UCL") prohibits unfair, unlawful, or fraudulent business practices. Each of these three prongs may give rise to actionable conduct under the UCL. *See* Cal. Bus. & Prof. Code § 17200.

In its FAC, E&E alleges that DirecTV violated the UCL by "[1] unfairly and wrongfully misrepresent[ing] E&E's status as a DirecTV dealer to TSA; [2] unfairly and wrongfully misrepresent[ing] to VA and other facilities that E&E had been terminated prior to the effective date of termination; and [3] unfairly and wrongfully misrepresent[ing] the terms at which DirecTV would upgrade TSA facilities to high definition programing." (FAC ¶ 72.) As the court noted in its previous Order, E&E does not pursue specific claims of fraudulent conduct, but instead appears to rest its UCL claim on unlawful and unfair conduct.[3] (FAC ¶ 71.)

As to the unfair prong of the UCL, the court finds that E&E's allegations do not suffice to establish a violation. When the alleged harms arise from "a direct competitor's unfair act or practice," then unfair conduct must also "threaten[] an incipient violation of an antitrust law, or violate[] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threaten[] or harm[] competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). In others words, the harms alleged must be "significant" and have impacts on "competition," not merely on a competitor. *See id*. at 186.

---

[3] Even so, DirecTV's alleged misstatement of the terms of a high-definition upgrade was directed at E&E. (FAC ¶ 72.) As this statement was made only to "the direct competitor or other non-consumer party to a contract," it does not constitute deception of the public under the UCL's fraudulent prong. *See Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). As to any fraudulent representations made by DirecTV to customers that E&E had been terminated as a DirecTV dealer, E&E still has not plead the details of these incidents with specificity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). That includes identifying "the who, what, when, where, and how" of the alleged fraud. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., In*c., 637 F.3d 1047, 1055 (9th Cir. 2011).

The court finds that the relationship between E&E and DirecTV is akin to those of "direct competitors." The gravamen of the FAC concerns DirecTV alleged attempts to compete with E&E for the same customers. *See, e.g.*, FAC ¶ 25 (alleging that DirecTV "began soliciting E&E's government entity customers"); *id.* ¶ 63 (alleging that DirecTV was awarded a customer contract that E&E would otherwise would have been awarded); *id.* ¶ 71 (alleging that DirecTV "divert[ed] the customers"). Under the *Cel-Tech* standard, E&E's allegations do not rise to the level of "an incipient violation of an antitrust law." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187. The specific harms alleged in the FAC chiefly impact E&E as DirecTV's competitor rather than "significantly threaten[ing] or harm[ing] competition." *Id.* In view of the fact that E&E's termination as a DirecTV dealer was imminent at the time of the alleged misrepresentations, E&E cannot demonstrate that the "effects [were] comparable to or the same as a violation" of the antitrust laws. *Id.* Accordingly, E&E's claim of unfair competition under the UCL fails.

Finally, the court observes that tortious interference with contractual relations may form the basis for a UCL claim under the unlawful conduct prong. *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007). This claim therefore rises or falls with E&E's tortious interference claim. As the court earlier determined that E&E has pled a claim for tortious interference, then so too has it pled a claim under the UCL's unlawful prong.

**F. Seventh Counterclaim for Accounting**

A claim for accounting is derivative of the other claims. *See Union Bank v. Superior Court*, 31 Cal. App. 4th 573, 593 (Ct. App. 1995). E&E's accounting claim appears to rely in substantial part upon the viability of the second counterclaim for breach of contract, which alleges that DirecTV failed to pay E&E commissions due under the Agreements. Because the court has dismissed this cause of action, it also dismisses E&E's seventh counterclaim for accounting.

**IV. CONCLUSION**

For the foregoing reasons, the court GRANTS in part and DENIES in part Plaintiff's Motion to Dismiss Defendant's First Amended Counterclaims.

As to Counterclaims One and Two, Defendant shall file amended counterclaims within twenty one (21) days after the date of this Order, or by Monday, February 26, 2018. Failure to file amended counterclaims by this date shall result in the striking of Defendant's counterclaims.

**IT IS SO ORDERED.**

Dated: February 5, 2018

_____

DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE